# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Colonial Warehouse, LLC,<br>a Corporation,<br><br><br>Debtor. | C/A No. 13-00662-dd<br><br>Chapter 11<br><br>**ORDER GRANTING GERMAN AMERICAN CAPITAL CORPORATION'S MOTION TO DISMISS** |

This matter is before the Court on a motion to dismiss or, in the alternative, to convert case under chapter 11 to case under chapter 7 filed by German American Capital Corporation, acting by and through servicer Situs Holdings, LLC ("German American"), on February 27, 2013. The debtor, Colonial Warehouse, LLC ("Debtor"), responded in opposition. The Court held hearings on April 8, 2013, and April 25, 2013. After careful consideration of the applicable law, arguments of counsel, and evidence submitted, the Court grants German American's motion to dismiss this case.

## FACTS

Debtor filed this case under chapter 11 of the Bankruptcy Code on February 1, 2013. Debtor is the owner of a certain piece of real property located at 1107-15 Shop Road, Columbia, South Carolina, which has a 258,000 square foot warehouse on it. This is the only real property listed on Debtor's schedules. William Maxwell Gregg also filed a chapter 11 petition on February 1, 2013, which is assigned case number 13-00665-dd. Gregg has a 100% ownership interest in Debtor.

Debtor obtained a loan in the original principal amount of $3,900,000 from Branch Banking and Trust Company of South Carolina f/k/a Branch Banking and Trust Company

1

("BB&T") evidenced by a promissory note dated December 16, 2005 ("Note 1"). Note 1 is secured by, among other things, Debtor's real property. Debtor obtained a second loan from BB&T in the original principal amount of $370,500 evidenced by a promissory note dated October 27, 2006 ("Note 2"). Note 2 is secured by, among other things, Debtor's real property, and encompasses the $3,900,000 that is the subject of Note 1 and increases the total principal amount due on both loans to $4,270,500. The mortgages securing notes 1 and 2 were assigned to German American pursuant to an assignment agreement dated March 29, 2011.

Debtor obtained a third loan in the original principal amount of $480,000 from BB&T evidenced by a promissory note dated August 22, 2008 ("Note 3"). Note 3 is secured by different real property than that securing Notes 1 and 2. The mortgage securing Note 3 was assigned to German American pursuant to an assignment agreement dated March 29, 2011.

All three loans are in default due to Debtor's failure to pay the outstanding balance on each of them when they matured by their terms on August 22, 2010. German American instituted a civil action related to Notes 1 and 2 in the Court of Common Pleas for Richland County, South Carolina on February 17, 2011, seeking a money judgment and decree of foreclosure. On November 19, 2012, the Court of Common Pleas entered an Order of Judgment and Decree of Foreclosure granting German American a decree of foreclosure of the mortgages securing Notes 1 and 2 and a joint and several money judgment against Debtor and Gregg, who had personally guaranteed both loans, for the amounts due under Notes 1 and 2 ("Foreclosure Order 1"). After extended discussions with counsel for Debtor in an effort to resolve the Foreclosure Order 1 short of a foreclosure sale, German American scheduled sale auctions on Monday, January 7, 2013, and Monday, February 4, 2013.

BB&T instituted a civil action related to Note 3 in the Court of Common Pleas for Richland County, South Carolina on February 17, 2011, seeking a money judgment and decree of foreclosure.  On November 19, 2012, the Court of Common Pleas entered an Order of Judgment and Decree of Foreclosure granting German American a decree of foreclosure of the mortgage securing Note 3 and a joint and several money judgment against Debtor and Gregg, who had personally guaranteed Note 3, for the amounts due under Note 3 ("Foreclosure Order 2").  After extended discussions with counsel for Debtor in an effort to resolve Foreclosure Order 2 short of a foreclosure sale, German American scheduled foreclosure sale auctions on Monday, January 7, 2013, and Monday, February 4, 2013.  Debtor filed its bankruptcy petition under chapter 11 of the Bankruptcy Code on February 1, 2013, the last business day before the February 4th foreclosure sale.

The only business Debtor currently conducts is leasing parking spaces on the real property to individuals during the University of South Carolina's college football season.  On its statement of financial affairs, Debtor indicates the parking business generated $40,957.18 of income during 2011.  Gregg testified at the hearing that he did not place the money generated by the parking business in 2012 in Debtor's accounts but rather placed it in his personal account.  In Gregg's April 5, 2013 periodic report regarding value, operations and profitability of entities in which he holds a substantial or controlling interest filed in his personal case, Gregg estimates the parking income as $30,000 per year before expenses.  No. 13-00665-dd, docket # 30.  Gregg agreed during his testimony at the hearing that the approximate monthly debt service on the amount owed to German American would be greater than $30,000.  Aside from the parking business, Gregg testified no other business has been conducted on the real property since 2009 or 2010, and Debtor has had no employees since 2010 or 2011.

Gregg testified that after winding down the previous business in 2009 or 2010, he intended to go into the solar engine business and that he had been trying to start this business for four and a half years, but there was a problem purchasing a necessary patent. He also stated that Debtor would be in the solar business if it could ever get the patent and that negotiations to obtain the patent had been ongoing for four and a half to five years. When asked whether there was hope for the solar business, Gregg testified his partner felt like there was hope. Alternatively, Gregg indicated he planned to build student housing on the real property but does not have financing for construction in place or building permits. He testified a pro-forma with pictures of the building and a feasibility study had been prepared, but no documents were introduced into evidence. Additionally, he stated he had a written commitment for a $60 million land lease, but it lapsed, meaning, he agreed, it is not currently in existence. When asked whether he had a construction loan, Gregg indicated he would not be able to obtain a loan while he was in bankruptcy so he was doing everything he could to get out of bankruptcy. Upon questioning by German American's attorney about whether Gregg planned to go into the student housing business or the solar engine business, the following testimony was given:

> Q. Which plan are you trying to get done? What's going to be the future business?
> A. Well, in my circumstances whichever one happens first.
> Q. Okay. Do you have any idea when that might happen?
> A. Any minute or next year. I don't know.

April 25, 2013 hearing transcript, p. 35 (docket # 45). Gregg testified he had promised to pay German American three or four times at the closing of various financing arrangements, but none of these arrangements closed. On direct examination, he stated the only reason he filed bankruptcy the day before the scheduled foreclosure sale of Debtor's real property was to avoid the foreclosure sale. Upon further questioning by Debtor's counsel about why this case was

filed, Gregg testified "[i]t was felt that we would be able to pay everybody in full and that this was a temporary or a period problem that had to be dealt with to get to where we could pay everybody in full." April 25, 2013 hearing transcript, p. 62 (docket # 45).  Aside from the solar business and student housing, Gregg stated there is a third option for Debtor's real property, which is to sell it as is.  However, no testimony or evidence was placed in the record suggesting that Debtor had attempted to sell the real property prior to filing bankruptcy or what efforts were currently being undertaken to sell the property.

Debtor introduced an appraisal into evidence at the hearing that valued the real property at $9.1 million.  Debtor indicates on its amended schedule A that its real property was sold at a tax sale in December 2012.  German American filed proofs of claim totaling $6,166,043.28.  Debtor's other major asset is a trade name it values at $2,500,000 on its schedule B.  German American is the only secured creditor listed on Debtor's schedule D, and its claim is listed at $4,200,451.39.  On schedule E, Debtor lists a $33,000 unsecured priority claim for the Internal Revenue Service ("IRS") and a $112,672.99 unsecured priority claim for property taxes owed to Richland County.[1]  Debtor lists no unsecured nonpriority claims on schedule F.

## ANALYSIS

Under 11 U.S.C. § 1112(b)(1), "[e]xcept as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the

---

[1] Debtor lists two additional small claims on schedule E for unknown amounts owed to state agencies—the South Carolina Department of Revenue and Taxation and the South Carolina Employment Security Commission.  The Department of Revenue has filed a proof of claim for $184.63.  The Employment Security Commission has not filed a claim as of the date of this Order.

5

appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." Section 1112(b)(4) sets forth a non-exclusive list of what constitutes "cause" for dismissal or conversion. *See Carolin Corp. v. Miller*, 886 F.2d 693, 699 (4th Cir. 1989). The Fourth Circuit has held that a chapter 11 case may be dismissed or converted because it was not filed in good faith. *Id.* at 698.

To dismiss a case for lack of good faith, this Court must find both objective futility and subjective bad faith. *Id.* at 700-01. While two separate inquiries are required, "proof inevitably will overlap" as "[e]vidence of subjective bad faith in filing may tend to prove objective futility, and *vice versa*." *Id.* at 701. In making a determination of whether a filing is in good faith, the Fourth Circuit has cautioned "that a totality of circumstances inquiry is required; that 'any conceivable list of factors is not exhaustive'; and that there is no 'single factor that will necessarily lead to a finding of bad faith.'" *Id.* (quoting *In re Natural Land Corp.*, 825 F.2d 296, 298 (11th Cir. 1987)). Moreover, "[d]ecisions denying access at the very portals of bankruptcy, before an ongoing proceeding has even begun to develop the total shape of the debtor's situation, are inherently drastic and not lightly to be made." *Id.* at 700.

**A. Objective Futility**

"The objective futility inquiry is designed to insure that there is embodied in the petition 'some relation to the statutory objective of resuscitating a financially troubled [debtor].'" *Id.* at 701 (alteration in *Carolin*) (quoting *In re Coastal Cable TV, Inc.*, 709 F.2d 762, 765 (1st Cir. 1983)). It concentrates "on assessing whether 'there is no going concern to preserve . . . and . . . no hope of rehabilitation, except according to the debtor's terminal euphoria.'" *Id.* at 701-02 (omission in *Carolin*) (quoting *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1073 (5th Cir. 1986)). Indeed, "'if there is not a potentially viable business in place worthy of protection and

6

rehabilitation, the Chapter 11 effort has lost its *raison d'etre* . . . .'" *Id*. at 698 (omission in *Winshall*) (quoting *In re Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir. 1985)). "[T]he ability of bankruptcy courts to inquire into [this] critical matter at the very threshold [is] indispensable to proper accomplishment of the basic purposes of Chapter 11 protection." *Id.*

Many of the factors that the Fourth Circuit emphasized in finding objective futility in *Carolin* exist in this case. There is little evidence in the record to suggest that Debtor has "significant potential ultimately to emerge from Chapter 11 proceedings in a rehabilitated condition—that is, ready to carry on with viable business operations." *Id.* at 702. Gregg, who is the 100% owner of Debtor, testified that he either planned to go into the solar engine business or the student housing business at the location of Debtor's real property. However, aside from the parking business, which generates approximately $30,000 per year, no other business has been conducted on the real property since 2009 or 2010, and Debtor has had no employees since 2010 or 2011. Debtor's plans to enter into the solar engine business are contingent on obtaining a patent that Debtor has been trying unsuccessfully to purchase for the past four and a half to five years. As for Debtor's plans to build student housing, Gregg testified regarding a pro-forma and feasibility study that was done, but neither of these items were introduced into evidence. He also indicated he had a written commitment for a $60 million land lease, which had lapsed. Because it had lapsed, he agreed it was not currently in existence. In *Carolin*, there was at least a letter of intent from a potential tenant. *Carolin*, 886 F.2d at 702. Further, when asked whether he had a construction loan, Gregg indicated he would not be able to obtain a loan while he was in bankruptcy. Therefore, financing for the project is not place, and there is little indication that financing can be obtained in the immediate future. Based on the testimony presented, these plans to enter the student housing business or the solar business constitute little more than

7

"terminal euphoria," *Id.* at 701-02 (quoting *Little Creek*, 779 F.2d at 1073), and it is unreasonable to expect Debtor's creditors to wait any longer for them to come to fruition.

One difference between *Carolin* and the instant case is that Gregg indicated Debtor would sell the property if his other plans could not be implemented after a short period of time. Gregg only mentioned the possibility of selling the real property on cross-examination by Debtor's attorney and did not mention such a plan on direct examination by German American's counsel. German American has asserted all three of its loans are in default due to Debtor's failure to pay the outstanding balance on each of them when they matured by their terms on August 22, 2010. Debtor has not contested this assertion. Given that no business has been conducted on the real property since 2009 or 2010, the only real means by which Debtor could have paid its debt to German American, which has been in default for over two and a half years, is to sell the real property. Yet, there has been no indication that Debtor tried to do so prior to filing this case, and now it expects its creditors to wait while it begins the process of marketing and selling the real property after it attempts, for a short period, to effectuate other plans that have not materialized over the past several years. Debtor's proffer that it will attempt to sell the real property does not alter the Court's finding that German American has demonstrated objective futility.[2]

---

[2] The Fourth Circuit has noted that "since *Carolin*, the Supreme Court has held that individual debtors with no ongoing business concern also may invoke Chapter 11." *In re Coleman*, 426 F.3d 719, 728 (4th Cir. 2005) (citing *Toibb v. Radloff*, 501 U.S. 157, 166 (1991)). "Thus, in judging the objective futility of a Chapter 11 petition in a liquidation context, courts must decide whether the petition represents an objectively futile attempt to achieve the more general goal of 'resuscitating a financially troubled debtor.'" *Id.* (quoting *Carolin*, 426 F.3d at 728). Based on Gregg's testimony, it appears Debtor wants to reorganize and continue its plans to enter the solar engine business or student housing business but will sell the real property and essentially liquidate if necessary. Regardless, if this is a liquidation case, the Court finds it was not filed with the goal of resuscitating a financially troubled debtor.

**B. Subjective Bad Faith**

The subjective bad faith prong "asks whether a Chapter 11 petition is motivated by an honest intent to effectuate reorganization or is instead motivated by some improper purpose." *In re Premier Auto. Serv., Inc.*, 492 F.3d 274, 280 (4th Cir. 2007). It "is designed to insure that the petitioner actually intends 'to use the provisions of Chapter 11 . . . to reorganize or rehabilitate an existing enterprise, or to preserve going concern values of a viable or existing business.'" *Carolin*, 886 F.2d at 702 (quoting In re Victory Constr. Co., 9 B.R. 549, 564 (Bankr. C.D. Calif. 1981), *vacated on other grounds*, 37 B.R. 222 (9th Cir. 1984)). "Subjective bad faith is shown where a petition is filed 'to abuse the reorganization process,' or 'to cause hardship or to delay creditors by resort to the Chapter 11 device merely for the purpose of invoking the automatic stay.'" *Premier Auto. Serv.*, 492 F.3d at 280 (quoting *Carolin*, 886 F.2d at 702). The following list of non-exclusive factors may be considered in determining subjective bad faith: (1) The debtor has one asset; (2) Secured creditors' liens encumber the asset; (3) There are generally no employees except for the principals and there is no ongoing business activity; (4) The debtor has little or no cash flow and no available sources of income to sustain a plan of reorganization or make adequate protection payments; (5) There are few, if any, unsecured creditors whose claims are relatively small; (6) There are allegations of wrongdoing by the debtor or its principals; (7) The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of secured creditors to enforce their rights; (8) The debtor is afflicted with the "new debtor syndrome" in which a one asset entity is created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors; (9) There is no realistic possibility of reorganization of the debtor's business; (10) The reorganization essentially involves a two-party dispute; and (11)

Bankruptcy offers the only possibility of forestalling loss of the property. *In re Harmony Holdings, L.L.C.*, 393 B.R. 409, 418-19 (Bankr. D.S.C. 2008)

As an initial matter, many of the eleven factors set forth above are present in this case and suggest subjective bad faith. However, the Fourth Circuit has held that a dismissal for lack of good faith should not be based on marking off items in a checklist but rather on the totality of the circumstances. *See Carolin*, 886 F.2d at 701. Under the totality of the circumstances based on the testimony and evidence presented, the Court finds this case was filed in subjective bad faith. Essentially, there is no enterprise to reorganize or rehabilitate, as Debtor has not been able to effectuate its plans over the past several years and the parking business does not generate significant income when compared to the outstanding indebtedness. In addition, Debtor filed its bankruptcy petition on the last business day before a scheduled foreclosure sale. Although this "final hour event[] [does] not, standing alone, warrant an inference of bad faith," *Carolin*, 886 F.2d at 703, it is certainly not indicative of good faith. However, the Court bases its finding not simply on the fact the case was filed on the eve of a foreclosure sale and that Debtor has no enterprise in a position that could serve as the basis of a confirmable plan but also because Debtor filed after a lengthy period of negotiations with German American during which Debtor sought to pay its debt through a means other than selling the real property and during which Debtor's counsel conceded German American was "very cooperative." April 25, 2013 hearing transcript, p. 20 (docket # 45). Having been unsuccessful in its settlement efforts and with a foreclosure sale looming, the Court finds that Debtor filed this case to invoke the automatic stay to buy more time to reach a settlement or find another means to pay its obligation other than selling its real property. Filing for this reason under these circumstances constituted subjective bad faith. *See Premier Auto. Serv.*, 492 F.3d at 280 ("Subjective bad faith is shown where a

10

petition is filed 'to abuse the reorganization process,' or 'to cause hardship or to delay creditors by resort to the Chapter 11 device merely for the purpose of invoking the automatic stay.'" (quoting *Carolin*, 886 F.2d at 702)); *In re Vallambrosa Holdings, L.L.C.*, 419 B.R. 81, 86 (Bankr. S.D. Ga. 2009) ("[S]ince the ongoing litigation between Debtor and Canpartners relates to this single asset and since Debtor faces no imminent threat from any of its other creditors, there is compelling evidence that this Chapter 11 filing is a mere two-party dispute relating to real property with Canpartners, as the secured lender, trying to foreclose, and Debtor seeking to avoid foreclosure."); *In re State St. Houses, Inc.*, 305 B.R. 726, 736 (Bankr. S.D. Fla. 2002) ("The ongoing litigation between Movants and Debtor and its affiliates relating to Kennedy Plaza, Debtor's apparent default on its mortgage obligations, and the fact that Debtor faces no imminent threat from any of its other purported creditors, is compelling evidence that this Chapter 11 filing is a mere two-party dispute relating to real property with Movants, as the mortgagees, trying to foreclose, and Debtor seeking to avoid foreclosure."); *In re Colonial Manor Assoc., Ltd.*, 103 B.R. 315, 319 (Bankr. M.D. Fla. 1989) ("This is nothing more than a secured creditor wanting to foreclose and a debtor wanting to buy time. The issues should be resolved in the non bankruptcy forum.").

  Debtor's subjective bad faith is not remedied by its indication it will sell its real property if necessary. Debtor could have started the process of selling the property long ago, and it is questionable whether Debtor should now be allowed to use the automatic stay to start that process and further delay paying its obligation to German American given that its debt to German American has been past due since August 2010 and that it has had no significant income or business activity since 2009 or 2010 which could be used as a source of funding for paying its debt. Rather, what Debtor has indicated is that it is willing to sell the property if its creditors or

11

the Court is not amenable to giving Debtor additional time to effectuate its other plans and the only other alternative is to see the property sold at a foreclosure sale.[3] This willingness on behalf of Debtor to now sell the property if its only other alternative is for this case to be dismissed and the property sold at a foreclosure sale when it could have started the process of selling the property some time ago does not transform this case into a good faith filing, and Debtor cites no authority that is contrary to this conclusion.

Debtor's counsel asserted that the primary reason for filing bankruptcy was to preserve the value of the real property to pay all the creditors in both Debtor's case and Gregg's personal case. April 25, 2013 hearing transcript, p. 25 (docket # 45). Debtor's concern is that the real property will not sell for enough at the foreclosure sale to cover the debt owed to German American and that German American will then assert a claim in Gregg's personal case for the remaining deficiency, which would adversely affect the creditors in Gregg's personal case. However, Debtor cites no authority to suggest this Court should consider the interests of a different debtor's creditors in another case when deciding whether this Debtor's case was filed in good faith. Debtor also references no authority suggesting that Debtor's duties as a debtor in possession in this case encompass protecting the creditors and estate of a different debtor. Gregg chose to place ownership of the real property at issue in Debtor's name. He also chose to make Debtor the primary obligor on the outstanding indebtedness to German American and to

---

[3] Gregg's testimony in this regard on cross-examination by Debtor's attorney was as follows:

> Q.   And are you willing, Mr. Gregg, to sell this property in an as is state if you need to in order to pay German American Capital Corporation? In other words, at some point in time - -
> A.   Yes.
> Q.   - - if the other two projects don't work out, and that's going to be a fairly short period of time, are you prepared to put the property on the market for sale as is?
> A.   Yes.

April 25, 2013 hearing transcript, p. 63-64 (docket # 45).

guarantee those obligations. German American has a right to proceed against Debtor by collecting against the real property Debtor owns which secures part of the debt owed to it before proceeding against Gregg.

**C. 11 U.S.C. § 1112(b)(2)**

Pursuant to section 1112(b)(2), this Court "may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate . . . ." Debtor argues this Court should consider the interests of creditors and the estate in Gregg's personal case in making a determination that section 1112(b)(2) applies. However, Debtor cites no authority suggesting the section 1112(b)(2) calculus may include the Court looking beyond the interests of the creditors and the estate of the debtor in the case before it. The Court has considered this argument in determining whether subjective bad faith has been shown and has found Debtor's motives for filing this case were improper. For the same reasons subjective bad faith exists, the Court also finds that this case does not present unusual circumstances that justify invoking section 1112(b)(2).

**D. Dismissal or Conversion**

Having found cause exists, section 1112(b)(1) gives the Court the option of either dismissing the case or converting it to a proceeding under chapter 7. This is essentially a two party dispute. Richland County's tax lien is protected in a foreclosure sale. This leaves only the relatively small claim of the Internal Revenue Service, the small claims of the two state agencies, and the interest of Gregg as the sole member of Colonial Warehouse, LLC. The best interests of creditors and the estate suggests dismissal of the case.

## **CONCLUSION**

For the reasons set forth herein, German American's motion to dismiss or, in the alternative, to convert is granted, and this case is dismissed.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**05/20/2013**



Entered: 05/21/2013

/s/ David R. Duncan
David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina